FILED
CLERK, U.S. DISTRICT COURT
16 AUG 02 PM 3:42
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

STEPHEN J. SORENSON, First Assistant United States Attorney (#3049)
STEWART C. WALZ, Assistant United States Attorney (#3374)
LESLIE HENDRICKSON-HUGHES, Special Assistant United States Attorney
185 South State Street, #400
Salt Lake City, Utah   84111
Telephone: (801) 524-5682
Facsimile:  (801) 524-6924
**Attorneys for the United States of America**

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:98CR 0278ST |
| Plaintiff, | FELONY INFORMATION |
| vs. | Vio. 15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5 (Securities Fraud); and 26 U.S.C. § 7203 (Failure to File Tax Return) |
| DAVID A. HESTERMAN, | |
| Defendant. | |

---

The United States Attorney charges:

### THE SCHEME AND ARTIFICE TO DEFRAUD

1.     PanWorld Minerals International, Inc., (PanWorld) was a company whose stock was publicly traded during all times material to this Indictment.

2.     ROBERT G. WEEKS was the president and principal executive officer of PanWorld during all times material to this Indictment.

257

3. The defendant DAVID A. HESTERMAN (HESTERMAN) was represented as a consultant to PanWorld at all times material to this Indictment. According to PanWorld, HESTERMAN consulted on management, financial, capitalization, securities and other matters. HESTERMAN was convicted of two counts of securities fraud on or about June 22, 1984.

4. KENNETH L. WEEKS is the brother of the ROBERT G. WEEKS and was represented by PanWorld to be a consultant to the company during times material to this Indictment.

5. JOSEPH A. FABIILLI is an individual who lived in New York at times material to this Indictment. FABIILLI operated a business known as Puritan Communications Corporation (Puritan), which supposedly provided financial public relations services. Relative to PanWorld, Puritan conducted a boiler room sales operation to encourage members of the public to buy PanWorld stock. FABIILLI also exercised substantial control over LaJolla Capital Corporation's New York City branch (LaJolla). LaJolla was at times material to this Indictment a securities broker-dealer.

6. CHRISTOPHER S. KNIGHT is an individual who at times material to this Indictment lived in New York. KNIGHT was a stockbroker at LaJolla and was in charge of the stockbrokers and other individuals who sold PanWorld stock through LaJolla.

7. LAWRENCE A. KRASNY is an individual who at times material to this Indictment lived in North Hills, California, and operated a business known as LK Management Corporation. LK Management purportedly provided financial public relations services to PanWorld in exchange for stock.

8. The securities laws require that in order to offer or sell stock, a company must file a registration statement with the Securities and Exchange Commission (SEC) making disclosures about the company, its business, and its financial statements, unless the offering is exempt from registration. Form S-8 (S-8) is one type of registration statement that a company may file before issuing stock to consultants for services. The Form S-8 registration may be used to register stock owned by consultants so that the consultant may sell the stock to others. However, Form S-8 may not be used to register stock given to consultants for capital raising activities such as making or creating a market for the company's stock or selling the company's stock and returning some or all of the proceeds from the sales of the stock to the company.

Regulation S (Reg. S) is one of the exemptions from the requirement that an offering of stock be registered. Under Reg. S, a company that is selling stock to foreign investors need not file a registration statement with the SEC. However, the recipient of the stock must reside in a foreign country and the stock cannot be issued to a corporation created by U.S. residents for the purpose of receiving the Reg. S stock.

9. One of the purposes of the securities laws is to promote free and open securities markets based upon fair dealing. Buyers and sellers of securities cannot use manipulative device to influence the securities markets. Some of these devices include:

   a. Matched trades in which buy or sell orders are entered by a person or persons who knows corresponding sell or buy orders of substantially the same size and at substantially the same price have been or will be entered;

3

b. Wash sales, which are securities transactions that involve no change in the beneficial ownership of the security; and

c. Trading that is based upon a series of transactions that create actual or apparent activity in a security for the purpose of inducing the purchase or sale of the security by others.

10. It was the object of the scheme to defraud for ROBERT G. WEEKS, DAVID A. HESTERMAN, KENNETH L. WEEKS, JOSEPH A. FABIILLI, CHRISTOPHER S. KNIGHT, and LAWRENCE A. KRASNY to issue millions of shares of PanWorld at no cost to these individuals in order to create artificially and fraudulently induced purchases and sales of PanWorld stock so the defendant and others could profit.

The scheme and artifice to defraud was executed in the following manner:

11. During 1994 and 1995, DAVID A. HESTERMAN and others issued millions of shares of PanWorld stock to Puritan Communications, a company controlled by JOSEPH FABIILLI, and LK Management, a company controlled by LAWRENCE KRASNY. The stock was supposedly issued under S-8.

12. DAVID A. HESTERMAN, KENNETH L. WEEKS and others engaged in a scheme to issue stock, supposedly exempt from registration under Reg. S, to foreign companies so that FABIILLI and KRASNY would benefit from the eventual sales of the stock. Additionally, the stock sold by the foreign company for the benefit of FABIILLI was sold to LaJolla and used to create the market in PanWorld stock.

13.     ROBERT G. WEEKS and DAVID A. HESTERMAN caused the stock to be issued fraudulently to the companies of FABIILLI and KRASNY in order to induce FABIILLI and KRASNY to create a market in PanWorld stock. FABIILLI and KRASNY received the stock at no cost. Therefore, all sales of stock resulted in monetary gain to FABIILLI and KRASNY.

14.     FABIILLI and CHRISTOPHER KNIGHT marketed PanWorld stock through LaJolla in New York City, New York. These two caused individuals at LaJolla and Puritan Communications to sell stock to members of the public through a boiler room type operation where members of the public were contacted by cold callers, and then sales were effectuated through brokers and others at LaJolla.

15.     When investors placed orders for the purchase of PanWorld stock through LaJolla, LaJolla obtained stock to sell to the investors from FABIILLI through his and Puritan's brokerage accounts. In this way, FABIILLI profited from the sales of the stock to the public. Also in this way, FABIILLI and KNIGHT engaged in matched sales and orders of PanWorld stock in order to hide the true nature of the market, that is, that LaJolla had an undisclosed supply of PanWorld stock from which buy orders were being filled and which was available to ensure that LaJolla would profit from each transaction.

16.     KRASNY also used cold callers operating from LK Management to encourage members of the public to buy PanWorld stock. When investors expressed an interest in buying the stock, Krasny's cold callers at LK Management directed investors to contact brokers who were working with KRASNY. These brokers then executed sales orders of PanWorld stock to the

investors, often filling those orders with KRASNY's or LK Management's stock without disclosing that fact to the members of the public, and thereby engaged in a series of matched trades that hid the true nature of the market, that is, that KRASNY had an undisclosed supply of PanWorld stock from which buy orders were being filled. In this way, KRASNY had a direct interest in encouraging purchases of PanWorld stock so that he could profit from those purchases.

17. DAVID A. HESTERMAN, KENNETH L. WEEKS and others had an arrangement with FABIILI AND KNIGHT to split profits from the sales of PanWorld stock. The fact of this agreement was not disclosed to potential purchasers and actual purchasers of PanWorld stock.

18. Neither KRASNY nor FABIILLI disclosed to individuals who were contacted by their cold callers that KRASNY, FABIILLI, or their companies, LK Management and Puritan Communications, respectively, received millions of shares of stock as compensation from PanWorld Minerals.

19. None of the schemers informed members of the public who were encouraged or who did buy PanWorld stock that the schemers were selling the stock held by them or for their benefit at the same time they or people working as their agents were recommending that the members of the public buy PanWorld stock.

20. DAVID A. HESTERMAN caused PanWorld to issue 7,000,000 shares to HESTERMAN and 3,400,000 shares to Seaboard Investments, a name that HESTERMAN did business under during 1994 and 1995. Once the market was created, HESTERMAN sold a portion of the stock and delivered the balance of the shares to companies controlled by an individual in Florida.

21.     In order to profit from the controlled market, ROBERT G. WEEKS, DAVID A. HESTERMAN, and KENNETH L. WEEKS caused 106 million shares of PanWorld stock to be issued to Canyon Corporation (Canyon), which then sold approximately sixty million of these shares. KENNETH WEEKS caused Canyon Corporation to be created in Nevis, British West Indies. He then directed the president of Canyon to open brokerage accounts and directed the disposition of the money from the sale of PanWorld stock conducted through those accounts. The stock issued to Canyon was issued fraudulently under S-8 because Canyon performed no services for PanWorld and it was issued for capital raising activities and was fraudulently issued under Reg. S because the foreign corporation was created for the purpose of receiving and selling Reg. S stock for a U.S. resident.

## COUNT I

1. The United States incorporates the allegations of Count 1 of this Information relating to the fraudulent activities in the marketing of PanWorld stock as a scheme and artifice to defraud.

2. Between on or about December 8, 1994 and April 18, 1995, in the Central Division of the District of Utah and elsewhere, the defendant

### DAVID A. HESTERMAN

did willfully, directly and indirectly, by use of means and instrumentalities of interstate commerce and of the mails, (1) employ a device, scheme, and artifice to defraud; (2) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in acts, practices, and courses of business which would operate and did operate as a fraud and deceit upon any person in

connection with the purchase and sale of a security, that is the common stock of PanWorld Minerals International, Inc.; in that the defendant did transfer and participate in the transfer of 106,000,000 shares of PanWorld stock to Canyon; all in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. § 78ff, and 18 U.S.C. § 2(a).

## COUNT II

During the calendar year 1996, in the Central Division of the District of Utah and elsewhere, the defendant

## DAVID A. HESTERMAN

a resident of the state of Utah, had and received a gross income of approximately $937,181.92; that by reason of such income he was required by law, following the close the calendar year 1996 and on or before April 15, 1997 to make an income tax return to the District Director, Internal Revenue Service at Salt Lake City, Utah, in the Central Division of the District of Utah or to the Director, Internal Revenue Service Center, Western Region, Ogden, Utah, stating specifically the items of gross income and any deductions and credits to which he was entitled; that well knowing all of the foregoing facts, he did willfully and knowingly fail to make said income tax return to said District Director of the Internal Revenue Service, or to any other proper officer of the United States; all in violation of 26 U.S.C. § 7203.

Dated this 16th day of August, 2002.

STEPHEN J. SORENSON
First Assistant United States Attorney

STEWART C. WALZ
Assistant United States Attorney

8